UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

Aristocrat Technologies Australia Pty Ltd.
an Australia proprietary limited company
85 Epping Road
North Ryde, NSW 2113
Australia

Case No.

and

Aristocrat Technologies, Inc.
a Nevada corporation
10220 Aristocrat Way
Las Vegas, Nevada 89135

Plaintiffs,

v.

Big Daddy Games, LLC
a Wisconsin limited liability company
733 Midway Road
Menasha, Wisconsin 54952-1043

and

Amusement Devices, Inc.
a Wisconsin corporation
1219 Appleton Road
Menasha, Wisconsin 54952-1043

and

Eric Jacobson
an individual
733 Midway Road
Menasha, Wisconsin 54952-1043

Defendants.

---

**COMPLAINT**

---

1. Plaintiffs Aristocrat Technologies Australia Pty Ltd. ("ATA") and Aristocrat Technologies, Inc. ("ATI") (collectively, "Plaintiffs"), by their undersigned counsel, allege as follows against Defendants Big Daddy Games, LLC ("Big Daddy"), Amusement Devices, Inc. ("ADI"), and Eric Jacobson ("Jacobson") ( collectively, "Defendants").

## NATURE OF THE ACTION

2. This is an action for trademark infringement and counterfeiting under the Lanham Act, 15 U.S.C. §§ 1114, 1116(d), and 1117; unfair competition and false designation of origin under 15 U.S.C. § 1125(a); and copyright infringement under the Copyright Act, 17 U.S.C. § 501.

## THE PARTIES

3. ATA is an Australian proprietary limited company with its principal place of business at 85 Epping Road, North Ryde, New South Wales 2113, Australia.

4. ATI is a Nevada corporation with its principal place of business at 10220 Aristocrat Way, Las Vegas, Nevada 89135.

5. Big Daddy is a Wisconsin limited liability company with its principal place of business at 733 Midway Road, Menasha, Wisconsin 54952-1043.

6. ADI is a Wisconsin corporation with its principal place of business at 1219 Appleton Road, Menasha, Wisconsin 54952-1043.

7. Jacobson is an owner and principal of Big Daddy and, upon information and belief, conducts business at 733 Midway Road, Menasha, Wisconsin 54952-1043.

## JURISDICTION AND VENUE

8. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a)–(b), and 15 U.S.C. § 1121, because this action arises under the Lanham Act and Copyright Act.

9. This Court has personal jurisdiction over Defendants because Big Daddy and ADI maintain their principal places of business and Jacobson resides in this District.

10. In addition to having sufficient "minimum contacts" under due process, the conduct giving rise to Plaintiffs' claims in this action satisfies Wis. Stat. §§ 801.05(1)(d) and 801.05(3) of the Wisconsin long-arm statute.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendants reside in this District and a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, and all, if not a substantial portion, of the infringing products that are the subject of this complaint are manufactured, assembled, distributed, sold, licensed and/or leased in this District.

## BACKGROUND ON ARISTOCRAT

12. ATA is a global gaming-technology company that owns, sells, licenses, leases and distributes electronic gaming machines ("EGM" or "EGMs") containing game software, trademarks, and other copyrighted works.

13. ATI is ATA's United States affiliate and, under license from ATA, markets, distributes, licenses, and leases ATA's EGMs and game software in the United States.

14. ATA uses the Aristocrat Marks in United States commerce through its authorized licensee, ATI, and ATA controls the nature and quality of the goods and services offered under the Aristocrat Marks.

15. Plaintiffs offer a portfolio of EGMs and game software known for distinctive titles, graphics, audiovisual elements, and gameplay, including the Buffalo family of games, which includes Buffalo Link, Buffalo Chief, Buffalo Diamond Extreme, Buffalo Gold, Buffalo

Gold Revolution, and the Dragon Link Family of Games, which includes Autumn Moon, Golden Century, Happy & Prosperous, and Panda Magic.

16. In the United States, ATI distributes, licenses, and leases ATA-owned EGMs and game software only through authorized channels and only to licensed and regulated gaming establishments.

17. In Wisconsin, ATI distributes, licenses and leases ATA EGMs and EGM software to licensed and regulated gaming establishments including Potawatomi Bingo Casino (Milwaukee), Ho-Chunk Gaming Wisconsin Dells (Baraboo), Gun Lake Casino (Wayland), and Ho-Chunk Gaming Wittenberg (Wittenberg).

18. Plaintiffs have not licensed, authorized, or approved Defendants to manufacture, assemble, distribute, sell, license, lease, display, perform, or operate ATA's EGMs or ATA's game software.

19. Plaintiffs have not licensed, authorized, or approved Defendants to sell, license, lease, place, install, display, perform, or operate EGMs or gaming software bearing ATA's trademarked game titles, or game software that is substantially similar to ATA's copyrighted game software, in any establishment or venue where Defendants' EGMs are found.

**PLAINTIFFS' TRADEMARKS**

20. ATA owns U.S. trademark Registrations for AUTUMN MOON (Reg. No. 5515140); BUFFALO (Reg. No. 7476658); BUFFALO CHIEF (Reg. No. 6365349); BUFFALO DIAMOND (Reg. No. 6245907); BUFFALO DIAMOND 10TH ANNIVERSARY EDITION (Reg. No. 6150654); BUFFALO CHIEF (Reg. No. 6365349); BUFFALO DIAMOND EXTREME (Reg. No. 6674120); BUFFALO GOLD (Reg. No. 5700209); BUFFALO GOLD COLLECTION (Reg. No. 5595752); BUFFALO GOLD COLLECTION and Design (Reg. No.

5848211); BUFFALO GOLD REVOLUTION (Reg. No. 5725225); BUFFALO LINK (Reg. No. 5404634); BUFFALO XTREME (Reg. No. 5782849); GOLDEN CENTURY (Reg. No. 4986714); HAPPY & PROSPEROUS (Reg. No. 5071663); PANDA MAGIC (Reg. No. 5304290); DRAGON LINK (Reg. No. 5360457); DRAGON LINK (Stylized), , (Reg. No. 7242834); BUFFALO (Stylized), (Reg. No. 7191714), BUFFALO & Design,




(Reg. No. 4190788); BUFFALO (Stylized), (Reg. No. 6969559); Buffalo Design,



(Reg. No. 4529598); Buffalo Design,



(Reg. No. 6814977); Sensory Mark (the mark consists of the sound of men shouting an elongated "B-U-F-F-A-L-O" call accompanied by the sound of galloping)(Reg. No. 7700743) (the "Aristocrat Trademark Registrations").

21. The marks identified in the Aristocrat Trademark Registrations are referred to collectively as the "Aristocrat Marks."

22. The Aristocrat Trademark Registrations are valid and subsisting and constitute prima facie evidence of the validity of the Aristocrat Marks, ATA's ownership of them, and

ATA's and its licensee's exclusive right to use them in connection with the goods and services identified in the Aristocrat Trademark Registrations.

23. The Aristocrat Marks are inherently distinctive.

24. The Aristocrat Trademark Registrations are in good standing, and certain Aristocrat Trademark Registrations are incontestable pursuant to 15 U.S.C. § 1065.

25. Through extensive and substantially continuous use and promotion, the Aristocrat Marks have acquired substantial goodwill and identify Plaintiffs as the source of the associated EGMs, software, and services.

**ATA'S COPYRIGHTED WORKS**

26. ATA owns original visual art, animations, audiovisual works, sound recordings, and other copyrightable content incorporated into its EGMs and software.

27. ATA owns valid and subsisting United States copyright registrations for Buffalo Yell (SR0000943206); Buffalo Link Flaming Arrow (VA0002265328); Buffalo Link Flaming Buffalo Head (VA0002265173); Flaming Buffalo Head Animation (PA0002309560); Buffalo and Design (VA0001951830); Buffalo Herd Design (VA0002156959); Buffalo Coin (Back) (VA0002265881); Buffalo Coin Front (VA0002266251); Buffalo Coin Fountain (PA0002313149); Buffalo Chief Character (VA0002285145); Buffalo Gold (VA0002280454); Autumn Moon – Goddess (VA0002369827); Autumn Moon – Hold & Spin (PA0002424274); and Golden Century – Emperor – Image (VA0002372588) (collectively, the "Aristocrat Copyright Registrations").

28. The works covered by the Aristocrat Copyright Registrations are referred to collectively as the "Aristocrat Copyrighted Works." ATA owns the exclusive rights in those works, including the rights to reproduce, distribute, display, and publicly perform them; and the

right to authorize and license third parties to reproduce, distribute, display, and publicly perform them.

## DEFENDANTS AND THEIR INFRINGING CONDUCT

29. Big Daddy manufactures, assembles, distributes, sells, licenses, leases, and/or services gaming and amusement machines, including EGMs, in Wisconsin.

30. ADI manufactures, assembles, distributes, sells, licenses, leases, and/or services gaming and amusement machines, including EGMs, in Wisconsin.

31. In September 2026, ATI learned of the following EGM located Thermal Chaos Pub n Grub in Dunbar, Wisconsin, that displayed ATA's BUFFALO GOLD REVOLUTION mark on its home screen and displayed ATA's BUFFALO GOLD REVOLUTION video game (the "Infringing Buffalo Gold Revolution Machine").

32. The Infringing Buffalo Gold Revolution Machine included a nameplate on top of the EGM bearing the name "Big Daddy Games" and a bill-insertion panel bearing the name Amusement Devices Inc. on the lower portion of the EGM as shown in the photos below.




33. Upon information and belief, Big Daddy manufactured, assembled and/or distributed the Infringing Buffalo Gold Revolution Machine.

34. Upon information and belief, Big Daddy sold, licensed, and/or leased the Infringing Buffalo Gold Revolution Machine to Thermal Chaos Pub n Grub.

35. Upon information and belief, ADI manufactured, assembled and/or distributed the Infringing Buffalo Gold Revolution Machine.

36. Upon information and belief, ADI sold, licensed, and/or leased the Infringing Buffalo Gold Revolution Machine to Thermal Chaos Pub n Grub.

37. The Infringing Buffalo Gold Revolution Machine is designed to appear to offer highly similar if not genuine game software and player experience as Plaintiffs' genuine Buffalo Gold Revolution game software.

38. The Infringing Buffalo Gold Revolution Machine software includes a copyright notice beneath the word REVOLUTION in the name of Aristocrat Technologies Australia Pty Ltd.

39. Without authorization, the Infringing Buffalo Gold Revolution Machine uses exact copies or colorable imitations of the Aristocrat Mark BUFFALO GOLD REVOLUTION.

40. Without authorization, the Infringing Buffalo Gold Revolution Machine reproduces, distributes, displays, and publicly performs graphics, music, and sound effects that are identical to or substantially similar to the Aristocrat Copyrighted Works.

41. Upon information and belief, Big Daddy has manufactured, assembled, distributed, sold, licensed, and/or leased other EGM's that infringe upon one or more of the Aristocrat Marks and Aristocrat Copyrighted Works in Wisconsin, and continues to do so, all without authorization from Plaintiffs (collectively, with the Infringing Buffalo Gold Revolution Machine, the "Infringing Machines").

42. Upon information and belief, each Infringing Machine, including the Infringing Buffalo Gold Revolution Machine, enable players to place wagers and earn prizes by playing the Infringing Machine, including the Infringing Buffalo Gold Revolution Machine game.

43. Upon information and belief, each Infringing Machine, including the Infringing Buffalo Gold Revolution Machine, enable players to earn points and cash in points for cash at machines owned and operated by Big Daddy and ADI, which are stationed in close proximity to the Infringing Buffalo Gold Revolution Machine.




44. Upon information and belief, ADI has manufactured, assembled, distributed, sold, licensed, and/or leased Infringing Machines in Wisconsin, and continues to do so, all without authorization from Plaintiffs.

45. At all relevant times, Jacobson owned, managed, and exercised operational control over Big Daddy and ADI, including control over Big Daddy's and ADI's acquisition,

manufacture, assembly, programming, marketing, distribution, placement, licensing, leasing, servicing, and removal of EGMs.

46. Upon information and belief, Jacobson personally directed, authorized, approved, and participated in Big Daddy's and ADI's manufacture, assembly, programming, distribution, placement, licensing, leasing, display, and operation of the Infringing Machines, including the incorporation, reproduction, display, and public performance of the Aristocrat Copyrighted Works.

47. Upon information and belief, Jacobson selected and/or approved the games and software installed on the Infringing Machines, directed or approved their placement, and authorized Big Daddy's and/or ADI's personnel or agents to install, service, maintain, update, or replace the software and audiovisual content displayed and performed by those machines.

48. Upon information and belief, Jacobson personally directed, authorized, approved, and materially participated in Big Daddy's and ADI's use of the Aristocrat Marks on and in connection with the Infringing Machines, including the selection and approval of the marks and game titles displayed on the machines and the distribution, licensing, leasing, placement, advertising, and/or operation of machines bearing Aristocrat Marks.

49. Jacobson knew, or should have known, that ATA owned the Aristocrat Copyrighted Works and that neither he nor Big Daddy nor ADI had authorization to reproduce, distribute, display, perform, or otherwise use those works. Despite that knowledge, Jacobson caused, encouraged, and facilitated Big Daddy and ADI's continued infringement.

50. Jacobson had the authority and practical ability to prevent, stop, or limit Big Daddy and ADI's infringement but declined to do so and instead approved and facilitated the infringing conduct.

51. Jacobson, Big Daddy, and ADI derived revenue from the distribution, placement, licensing, leasing, servicing, or operation of the Infringing Machines, and Jacobson received a direct financial benefit from that exploitation.

52. Defendants' conduct is likely to cause confusion, mistake, or deception concerning the source, sponsorship, affiliation, or approval of the Infringing Machines.

53. Defendants acted willfully and with knowledge of Plaintiffs' rights.

54. Unless enjoined, Defendants' conduct will continue to cause Plaintiffs irreparable harm for which there is no adequate remedy at law.

## COUNT I

### ATA's Trademark Infringement Claim Against Defendants (Lanham Act, 15 U.S.C. § 1114(1))

55. ATA realleges and incorporates paragraphs 1 through 54 as though fully set forth herein.

56. ATA owns the Aristocrat Trademark Registrations and the Aristocrat Marks.

57. Without ATA's consent, Defendants used and/or authorized the use in commerce of reproductions, counterfeits, copies, or colorable imitations of the Aristocrat Marks in connection with the manufacture, assembly, distribution, sale, licensing, leasing, display, and operation of the Infringing Machines.

58. The Infringing Machines, and the game software installed on the Infringing Machines, and the related distribution, licensing, leasing, and/or operation of the Infringing Machines are identical or closely related to the goods identified in the Aristocrat Trademark Registrations.

59. Defendants' unauthorized use is likely to cause confusion, mistake, or deception concerning the source, affiliation, sponsorship, or approval of the Infringing Machines and related goods and services.

60. Defendants' infringement was and is knowing, intentional, and willful.

61. As a direct and proximate result of Defendants' conduct, ATA has suffered and will continue to suffer damages and irreparable harm. ATA is entitled to relief under 15 U.S.C. §§ 1116 and 1117.

## COUNT II

**ATA's Trademark Counterfeiting Claim Against Defendants**
**(Lanham Act, 15 U.S.C. §§ 1114(1), 1116(d), and 1117(b)–(c))**

62. ATA realleges and incorporates paragraphs 1 through 61 as though fully set forth herein.

63. The Aristocrat Marks include federally registered marks for EGMs and related goods including the Aristocrat Trademark Registrations.

64. Without ATA's authorization, Defendants used and authorized the use in commerce of spurious marks identical to, or substantially indistinguishable from, the Aristocrat Marks on the same type of goods for which the Aristocrat Marks are registered.

65. Defendants knew that the Infringing Machines were not genuine Aristocrat machines and that the marks displayed on them had not been authorized by Plaintiffs, but intentionally used those marks to make the machines appear genuine or affiliated with Plaintiffs.

66. Defendants intentionally used the counterfeit marks in connection with the sale, offering for sale, distribution, licensing, and leasing of the Infringing Machines.

67. The marks displayed on the Infringing Machines are counterfeit marks within the meaning of 15 U.S.C. §§ 1116(d) and 1127.

68. Each of the Aristocrat Marks displayed on the Infringing Machines was registered with the U.S. Patent and Trademark Office at the time of Defendants' unauthorized manufacture, assembly, distribution, sale, licensing, and/or leasing of the Infringing Machines.

69. Defendants' use of the counterfeit marks was intentional and knowing.

70. ATA is entitled to the remedies available under 15 U.S.C. §§ 1116, 1117(b)–(c), and 1118, including injunctive relief; seizure, impoundment, and destruction as authorized by law; recovery of damages and profits subject to the statutory enhancement in 15 U.S.C. § 1117(b); or, at ATA's election, statutory damages under 15 U.S.C. § 1117(c).

## COUNT III

### Unfair Competition and False Designation of Origin Against Defendants (Lanham Act, 15 U.S.C. § 1125(a))

71. Plaintiffs reallege and incorporate paragraphs 1 through 70 as though fully set forth herein.

72. Defendants' unauthorized use in commerce of the Aristocrat Marks on and in connection with the Infringing Machines constitutes false or misleading designations of origin, descriptions, and representations of fact.

73. Defendants' conduct is likely to cause consumers to believe mistakenly that the Infringing Machines and related goods or services originate with, are affiliated with, or are sponsored, authorized, or approved by Plaintiffs.

74. Defendants' conduct was and is knowing, intentional, and willful.

75. As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and will continue to suffer damages and irreparable harm. Plaintiffs are entitled to relief under 15 U.S.C. §§ 1116 and 1117.

## COUNT IV

**Direct Copyright Infringement Against Big Daddy and ADI**
**(Copyright Act, 17 U.S.C. § 501)**

76. ATA realleges and incorporates paragraphs 1 through 75 as though fully set forth herein.

77. ATA owns valid copyrights in the Aristocrat Copyrighted Works and has registered those works with the United States Copyright Office.

78. Without ATA's authorization, Big Daddy and ADI reproduced, distributed, displayed, and publicly performed the Aristocrat Copyrighted Works through the manufacture, assembly, distribution, placement, licensing, leasing, display, and/or operation of the Infringing Machines.

79. Big Daddy and ADI thereby infringed ATA's exclusive rights under 17 U.S.C. § 106 in violation of 17 U.S.C. § 501.

80. Big Daddy and ADI's infringement was and is willful.

81. As a direct and proximate result of Big Daddy and ADI's infringement, ATA has suffered and will continue to suffer damages and irreparable harm. ATA is entitled to injunctive relief; actual damages and Big Daddy and ADI's profits under 17 U.S.C. § 504(b), or, at ATA's election, statutory damages under 17 U.S.C. § 504(c); costs and attorneys' fees under 17 U.S.C. § 505; and other relief available under the Copyright Act.

## COUNT V

**Contributory and Vicarious Copyright Infringement Against Jacobson**
**(Copyright Act, 17 U.S.C. § 501)**

82. ATA realleges and incorporates paragraphs 1 through 81 as though fully set forth herein.

83. Big Daddy and ADI directly infringed ATA's copyrights by reproducing, distributing, displaying, and publicly performing the Aristocrat Copyrighted Works without authorization.

84. Jacobson knew of Big Daddy and ADI's infringement and personally directed, authorized, approved, encouraged, and materially contributed to that infringement, including through the acquisition, manufacture, assembly, programming, distribution, placement, licensing, leasing, servicing, and/or operation of the Infringing Machines.

85. On information and belief, Jacobson personally approved of the acquisition of the Infringing Machines and the infringing game software installed on each Infringing Machine.

86. On information and belief, Jacobson personally approved the copying, installation and/or display of Aristocrat Copyrighted Works on the Infringing Machines.

87. On information and belief, Jacobson personally selected and approved game titles used on each Infringing Machine.

88. On information and belief, Jacobson personally directed distribution or placement of machines offering game software that was identical or substantially similar to Aristocrat Copyrighted Works.

89. On information and belief, Jacobson personally had authority to discontinue or direct others to discontinue use of the Infringing Machines that offered game software that was identical or substantially similar to Aristocrat Copyrighted Works marks but chose not to do so.

90. Jacobson's affirmative conduct fostered and facilitated Big Daddy and ADI's infringement and was material to Big Daddy and ADI's ability to reproduce, distribute, display, and/or publicly perform the Aristocrat Copyrighted Works. Jacobson is therefore contributorily liable for Big Daddy and ADI's infringement.

91. Jacobson possessed the right and practical ability to supervise, control, prevent, stop, or limit Big Daddy and ADI's infringement, including authority over the selection of software and audiovisual content installed on the Infringing Machines and over their manufacture, assembly, distribution, placement, licensing, leasing, servicing, and/or operation of the Infringing Machines.

92. The inclusion of Plaintiffs' well-known games, marks, graphics, animations, and sounds increased the attractiveness and commercial value of the Infringing Machines, induced establishments to obtain or retain the machines, encouraged patrons to play them, and thereby generated licensing, leasing, service, placement, or revenue-sharing income for Big Daddy and ADI and Jacobson.

93. Jacobson received a direct financial benefit from Big Daddy and ADI's infringement, including revenue and other commercial benefits generated by the distribution, placement, licensing, leasing, servicing, and/or operation of the Infringing Machines. Jacobson is therefore vicariously liable for Big Daddy and ADI's infringement.

94. Jacobson's infringement was and is willful.

95. As a direct and proximate result of Jacobson's conduct, ATA has suffered and will continue to suffer damages and irreparable harm. ATA is entitled to the remedies available under 17 U.S.C. §§ 502–505.

## JURY TRIAL DEMAND

96. Plaintiffs demand a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against the applicable Defendant or Defendants and grant the following relief:

A. Preliminarily and permanently enjoin Defendants, their officers, agents, servants, employees, representatives, and all persons acting in active concert or participation with them who receive actual notice of the injunction from using the Aristocrat Marks, any counterfeit or colorable imitation of the Aristocrat Marks, or any false designation or representation likely to cause confusion concerning Plaintiffs' affiliation, sponsorship, authorization, or approval;

B. Preliminarily and permanently enjoin Big Daddy, ADI and Jacobson, and all persons acting in active concert or participation with them who receive actual notice of the injunction, from reproducing, distributing, displaying, publicly performing, or otherwise infringing the Aristocrat Copyrighted Works, or inducing, causing, materially contributing to, supervising, controlling, or financially benefiting from such infringement;

C. Order the impoundment and destruction, or other disposition as the Court deems appropriate, of the Infringing Machines, counterfeit marks, unauthorized copies of the Aristocrat Copyrighted Works, and related materials under 15 U.S.C. § 1118 and 17 U.S.C. § 503, and grant any seizure relief authorized by 15 U.S.C. § 1116(d);

D. Require Defendants to account for all profits attributable to their infringement and award Plaintiffs their actual damages and Defendants' profits as authorized by 15 U.S.C. § 1117(a), together with any enhancement the Court finds appropriate;

E. For intentional use of counterfeit marks, award ATA three times Defendants' profits or ATA's damages, whichever is greater, together with reasonable attorneys' fees, under 15 U.S.C. § 1117(b), or, at ATA's election, statutory damages under 15 U.S.C. § 1117(c);

F. Award ATA its actual damages and Defendants' profits attributable to copyright infringement under 17 U.S.C. § 504(b), or, at ATA's election, statutory damages under 17

U.S.C. § 504(c), including enhanced statutory damages for willful infringement to the extent authorized by law;

G. Award Plaintiffs their reasonable attorneys' fees and costs under 15 U.S.C. § 1117 and award ATA its reasonable attorneys' fees and costs under 17 U.S.C. § 505;

H. Award prejudgment and post-judgment interest as permitted by law; and

I. Grant such other and further relief as the Court deems just and proper.

Dated this 19th day of October 2026.

*s/Guy R. Temple*
Guy Temple
Wisconsin State Bar ID No. 108636
gtemple@reinhartlaw.com
Daniel E. Kattman
Wisconsin State Bar ID No. 1030513
dkattman@reinhartlaw.com
Heidi R. Thole
Wisconsin State Bar ID No. 1096439
hthole@reinhartlaw.com
Attorneys for Plaintiffs
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Telephone: 414-298-1000
Facsimile: 414-298-1097